**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re CHERM NELSON, | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| ------------------------------------------------- | ) | No. 21-cv-03750 |
| | ) | |
| CITY OF CHICAGO | ) | Judge John J. Tharp, Jr. |
| | ) | |
| Appellant, | ) | (Bankr. No. 18 BK 16860) |
| | ) | |
| v. | ) | |
| | ) | |
| CHERM NELSON, | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Debtor Cherm Nelson filed for Chapter 13 bankruptcy in 2018. Her proposed bankruptcy plan contemplated repayment of both secured and unsecured claims held by the City of Chicago ("the City"). In its proof of claim, the City assigned a higher value to the collateral securing Nelson's debt than did Nelson in the proposed plan. The plan specified, however, that the value the City listed in its proof of claim controlled over any contrary amount in the plan. Nelson did not challenge the value of the collateral in the City's proof of claim before plan confirmation. Years after the bankruptcy court had confirmed the plan, however, Nelson moved to determine the value of the collateral underlying the City's secured claim and to modify the plan to reduce the total payment to unsecured creditors. The bankruptcy court granted both of Nelson's motions, and the City appeals. The Court agrees with the City that plan confirmation fixed the value of the City's secured claim. The Court further finds that the bankruptcy court abused its discretion in granting the modification order reducing the amounts due to unsecured creditors. The bankruptcy court's order is therefore reversed.

## BACKGROUND

On June 13, 2018, Nelson filed a bankruptcy petition and proposed plan under Chapter 13 of the Bankruptcy Code. Nelson's proposed plan listed the City as one her creditors, estimating the amount of the City's total claim as $4,155.85 secured by a 2006 Volvo valued at $3,700. That plan also specified, however, that "[f]or secured claims of governmental units . . . the value of a secured claim . . . listed in a proof of claim filed in accordance with the Bankruptcy Rules controls over any contrary amount" listed in the proposed plan. Proposed Plan § 3.2, Bankr. ECF No. 2.

Like all Chapter 13 cases, the proposed plan also included a payment schedule to incrementally reduce Nelson's debt. Nelson was to pay the bankruptcy trustee for thirty-six months: $240 per month for the first eighteen months, and $340 for the remaining eighteen months. The plan also indicated, however, that "[i]f fewer than 60 months of payments are specified, additional monthly payments will be made to the extent necessary to make the payments to creditors specified in this plan." *Id*. § 2.1. Pursuant to § 5.1 of the proposed plan, Nelson was to pay twenty-six percent of the total amount of any nonpriority unsecured claims, a required payment which she estimated to be $1,760. *Id.* § 5.1.

The same day that Nelson filed her proposed plan, June 12, 2018, the City filed a proof of claim for fines related to traffic ticket violations in the amount of $5,677. Although the City first listed the claim as unsecured, it filed an amended proof of claim on June 20, 2018, indicating that the claim was fully secured by a vehicle possessory lien on the 2006 Volvo. On June 14, 2018, the City also filed a $7,828 unsecured claim based on an administrative judgment for an ordinance violation.

Nelson did not file any objections to the City's proofs of claims. The bankruptcy court confirmed her proposed plan on August 6, 2018.

2

Over two and a half years later, in February 2021, Nelson filed two motions. First, Nelson moved to determine the amount of the City of Chicago's secured claim. She asserted that, at the time that she filed her proposed plan, the value of the collateral for the City's secured claim was $3,700, as she originally estimated. Citing § 506(a) of the Bankruptcy Code, Nelson sought to limit the City's secured claim to the value of its collateral.

The City objected to the motion to determine the amount of the secured claim. The City argued that—pursuant to the terms of the plan itself—its proof of claim controlled over any contrary amount that Nelson originally listed. According to the City, Nelson could not seek to revalue a secured claim after failing to object to the City's proofs of claim before plan confirmation.

Second, Nelson moved to modify the terms of the plan. Nelson affirmed that she was current on all her payments pursuant to the plan, but that the plan was "projected to run another 18 months." Mot. to Modify ¶ 5, Bankr. ECF No. 27. She attributed her inability to pay off her debt within the original thirty-six-month schedule to the fact that she was paying more than the value of the collateral on the City's secured claim. To pay off the debt within the thirty-six-month time originally contemplated in the plan, Nelson requested to modify the planned payments to unsecured creditors. Specifically, she requested that the total amount paid to creditors be reduced from twenty-six percent of the unsecured claims to two percent of the unsecured claims. To support that request, Nelson indicated that—although she was able to maintain the monthly payments required by the plan—she "just want[ed] the case to end as quickly as is just." *Id.* ¶ 12.

The City also objected to Nelson's motion to modify. It pointed out that the plan provided for sixty months of payments to the extent necessary to make payments to specified creditors. In

3

addition, the City argued that Nelson was not pursuing the plan modification in good faith because she proposed to substantially eliminate payments to unsecured creditors with "no showing of having difficulty making plan payments." Resp. to Mot. to Modify at 7, Bankr. ECF No. 34.

After ordering supplemental briefing[1] and holding a hearing, the bankruptcy court granted both of Nelson's motions. Regarding the motion to determine the value of the City's secured claim, the bankruptcy court distinguished between valuation of a claim and an objection to it. It reasoned that a debtor may seek the valuation of a secured claim at any time, including after confirmation of a plan. Questioning the City's good faith in objecting to Nelson's motion, the bankruptcy court interpreted the plan as limiting the City's claim to the amount Nelson indicated was secured by the lien, $3,700. The bankruptcy court faulted the City for failing to object to Nelson's estimated claim amount before confirmation. By contrast, it found that Nelson was seeking valuation in good faith. The bankruptcy court remarked that Nelson had valued the collateral of the City's lien at $3,700 in the 2018 plan and was merely pursuing her rights under § 506(a) of the bankruptcy code to "strip down" the lien to its collateral value.

As for the motion to modify, the bankruptcy court first observed that Nelson did not provide a statutory basis for her request for post-confirmation modification, 11 U.S.C. § 1329. Nonetheless, the Court granted the motion, concluding that Nelson's requested amendment was "the only way for the Debtor to achieve the relief which will be granted." Bankr. Ct. Order at 1, ECF No. 1-4.

---

[1] The bankruptcy court ordered the parties to address whether the City's possessory lien on Nelson's vehicle was valid. It did not address the issue in its order on the motions and appeared to take the validity of the City's lien for granted. By failing to respond to the City's appellate brief, Nelson forfeits any challenge to that presumption. *See In re Kids Creek Partners*, 200 F.3d 1070, 1073 (7th Cir. 2000).

The City appeals the grant of both motions. Nelson has not submitted a response brief to the City's appeal.

## DISCUSSION

In a bankruptcy case, the district court acts as an appellate court. 28 U.S.C. § 158(a). When considering a bankruptcy court's decision on a motion to modify a confirmed plan, the district court reviews for abuse of discretion. *In re Witkowski*, 16 F.3d 739, 746 (7th Cir. 1994). A district court considers de novo the bankruptcy court's legal conclusions when reviewing for an abuse of discretion. *Kovacs v. United States*, 739 F.3d 1020, 1023 (7th Cir. 2014). Factual findings are reviewed for clear error. *Id.*

## I.    Motion to Determine Secured Claim

More than two and a half years after the bankruptcy court confirmed her proposed plan, Nelson moved to determine the value of the only secured claim included in that plan. The bankruptcy court erred when it granted that motion, but not for the reason that the City proffers.

"On request by a party in interest and after notice," a court may determine the amount of a secured claim under § 506 of the Bankruptcy Code. Fed. R. Bankr. P. 3012. A debtor may request to determine the amount of a "governmental unit's" secured claim "by motion or in a claim objection after the governmental unit files a proof of claim or after the time for filing one . . . has expired." *Id.* Section 506(a)(1) of the Bankruptcy Code clarifies that a creditor's claim is secured only to the extent of the value of the collateral. Section 506(a)(2) explains how the court determines that value: by looking to the replacement value of the collateral at the time of plan filing. The City does not dispute that Nelson followed the procedures to obtain relief under § 506(a); she submitted her request by motion and supported her motion with evidence of her car's average resale value.

5

Where the City disagrees with the bankruptcy court's decision is in Nelson's timing. According to the City, if a debtor fails to object to a creditor's proof of claim before confirmation, issue preclusion prevents the debtor from seeking the valuation of a secured claim after confirmation. In support, the City relies on *Adair v. Sherman*, 230 F.3d 890, 894 (7th Cir. 2000). The Seventh Circuit held in *Adair* that a debtor could not sue one of his creditors under the Fair Debt Collection Practices Act for overvaluing collateral in a separate bankruptcy proceeding. *Id.* at 894-95. Having failed to object to the creditor's proof of claim in the underlying bankruptcy proceeding, the debtor could not collaterally attack the bankruptcy court's judgment in a separate lawsuit. *Id.* at 895.

The reach of *Adair* does not extend as far as the City contends, however. As the Seventh Circuit has explained, "*Adair* and similar decisions that arise from sequential suits are irrelevant within one suit." *In re Hovis*, 356 F.3d 820, 822 (7th Cir. 2004). Nelson does not seek to reexamine the bankruptcy court's determination of the amount of her debt in a separate lawsuit; rather, she seeks to modify the valuation of one of her creditor's claims within the same proceeding. Because "issue preclusion has no role within a unitary, ongoing proceeding," *Adair* has no bearing on this case.[2] *Id.*

Nevertheless, "the deadlines set by statute and rule" govern when a debtor may seek relief within a single suit. *Id.* The section of the Bankruptcy Code relevant here, § 506, provides

---

[2] The City also discusses *In re Adams*, in which the bankruptcy court noted that "[t]he only limitation on a post-confirmation 'strip down' motion under Rule 3012 or valuation under § 506(a) is that the parties are bound by any valuation included in a confirmed plan where the secured creditor filed a claim pre-confirmation and its asserted collateral value was not challenged before confirmation." 264 B.R. 901, 905 (Bankr. N.D. Ill. 2001). *Adams* cited *Adair* to support that statement, but *Hovis* explicitly cabined *Adair* to cases involving sequential suits. The "only limitation" language in *Adams* does not help Nelson either. As discussed below, a close reading of § 506(a) shows that the text of the statute itself does limit the time for valuation to confirmation.

that the value of a secured claim "shall be determined . . . in conjunction with any hearing . . . *on a plan affecting such creditor's interest.*" 11 U.S.C. § 506(a)(1) (emphasis added). In other words, a court determines the value of a secured creditor's claim—based on the value of the collateral that secures it—at the time that it confirms a plan. *See In re Fareed*, 262 B.R. 761, 770-71 (Bankr. N.D. Ill. 2001).[3] When the bankruptcy court confirmed Nelson's proposed plan, the plan specified that the City's proof of claim determined the secured claim's value, notwithstanding any claim amount listed in the plan. And the City's proof of claim indicated that the full $5,677.85 was the "[a]mount of the claim that is secured." Claim Register 1-2. At the time of confirmation, then, the value of the City's claim was "determined" to be $5,877.85. *See* Proposed Plan § 3.2 ("The debtor[] request[s] that the court determine the value of the secured claims listed below. . . . For secured claims of governmental units, unless otherwise ordered by the court, the value of a secured claim listed in a proof of claim . . . controls over any contrary amount listed below."). Because the amount of the claim was already determined—pursuant to § 506 and the language of the plan—at confirmation, Nelson could not move to determine the value of the City's secured claim years after confirmation.

Review of the applicable caselaw and the purpose of § 506 supports this interpretation. The case lending the most support to Nelson's position is *Hovis*, 356 F.3d at 820, which at first glance, appears to sanction post-confirmation motions like Nelson's. In that case, the Seventh Circuit allowed a debtor's objection to a creditor's claim a month after confirmation, observing that no statute or rule requires an objection to an allowed claim to precede confirmation. *Id.* at 822-23. On a closer look, however, *Hovis* does not map neatly onto Nelson's case. That is

---

[3] Although *Fareed* relied partially on *Adair* in concluding that the value of a debtor's secured claim was fixed at the time of confirmation, its analysis was largely rooted in the textual and functional differences between § 502 and § 506, rather than in the doctrine of issue preclusion. *See Fareed*, 262 B.R. at 768-69.

because the Bankruptcy Code treats differently ***objecting*** to a proof of claim under § 502 and ***determining the amount*** of a secured claim under § 506. The Court in *Hovis* evaluated the former while Nelson's motion concerns the latter.

Section 502 of the Bankruptcy Code, the section governing the claims objections at issue in *Hovis*, governs what is called "claim allowance." After a creditor files a proof of claim, that claim is presumed "allowed" under § 502(a) unless there exist grounds enumerated in § 502(b) to reject, or disallow, that claim. *See Fareed*, 262 B.R. at 764-65. Allowance under § 502 does not depend on the secured or unsecured status of a creditor's claim; only the total amount of the claim matters. *Id.* at 765. A debtor or another interested party may object to the amount a creditor lists in a proof of claim, and, as noted in *Hovis*, nothing in the Bankruptcy Code or Federal Rules of Bankruptcy Procedure prevents that party from objecting after plan confirmation. *Hovis*, 356 F.3d at 822.

By contrast, § 506 of the Bankruptcy Code—the section relevant to Nelson's motion— serves a different purpose. Again, that section determines the value of a secured claim based on the value of the collateral that secures it. 11 U.S.C. § 506(a). When a debtor moves under Federal Rule of Bankruptcy Procedure 3012 to determine the amount of a secured claim under § 506, the debtor asks the court to value the collateral securing the debt. The effect is a bifurcation of the debt into secured and unsecured portions: the creditor's secured claim is "stripped down" to the repossession value of the collateral and the remaining balance is classified as unsecured debt. *See Fareed*, 262 B.R. at 765-66. Unlike § 502, which does not specify when claim objections must be made, § 506 contemplates the point at which the court determines the value of the secured debt: "such value shall be determined . . . in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest." 11 U.S.C. § 506 (a)(1).

8

As Judge Wedoff observed in *Fareed*, the difference in treatment between valuation of secured claims and objections to claims is logical. *See* 262 B.R. at 769. The few secured claims that do arise in Chapter 13 cases often comprise the backbone of Chapter 13 plans and influence the parties' reliance interests. *Id.* Given that a debtor generally knows, at least constructively, about a creditor's claims that are secured by collateral, a debtor stands in a good position to value the underlying collateral in a proposed plan. And the debtor may always challenge a creditor's asserted valuation in a proof of claim. Placing the onus on the debtor to value a claim up front does not unduly burden the debtor. Further, fixing the value of creditors' secured claims pursuant to § 506 at plan confirmation "provid[es] certainty as to the payments required" and "facilitat[es] a determination . . . that the debtor will be able to make the required plan payments." *Id*.

It is less practicable, on the other hand, to require that a court definitively resolve all claims allowed under § 502 at confirmation. A Chapter 13 plan may involve many small, unsecured claims, and it would be unreasonable and inefficient to delay plan confirmation until all objections to those claims are resolved. *Fareed,* 262 B.R. at 770. Placing the burden on the debtor to include the value of every unsecured claim in a proposed plan would be unrealistic; hence, a bankruptcy court may rely on creditor's proofs of claims—which may be filed even after the plan is confirmed—and objections to those claims to determine unsecured plan payment. But the minutiae of pro rata payment to unsecured creditors may be resolved post plan confirmation, at which point the value of the claims that must be fully paid off has been established. *See id.* A debtor therefore can object to a creditor's claim after confirmation.

The functional differences between § 502 and § 506 explain why § 506 contemplates determination of a secured claim's value at confirmation and § 502 does not place time limits on objections. That distinction is key in resolving this case: although Nelson was free to object to

the amount listed in the City's proof of claim at any time, the value of the City's collateral was fixed at plan confirmation after Nelson failed to challenge it.

In this matter, the bankruptcy court recognized that Nelson was seeking to value the collateral underlying the City's claim rather than objecting to the claim itself. In its further reasoning, however, the bankruptcy court flipped the analysis on its head: it alluded to *Adair* in mentioning "cases that say that claim objections can not be made post-confirmation," but concluded that similar constraints do not apply to claim valuation. Bankr. Ct. Order at 2, ECF No. 1-4. Noting that Federal Rule of Bankruptcy Procedure 3012 "does not limit the time in which a party in interest may ask a court to determine the amount of a secured claim," the bankruptcy court found no issue with the timing of Nelson's motion. *Id*. at 4. That interpretation requires reversal. Bankruptcy rules of procedure may not set forth a time limit for moving for valuation, but a temporal constraint does appear in the Code itself. Section 506(a)(1) expressly requires that collateral be valued "in conjunction with any hearing . . . on a plan affecting a creditor's interest." The bankruptcy court erred in overlooking that statutory mandate.

The bankruptcy court also faulted the City for failing to object to the plan and the Nelson's valuation of the collateral securing its claim before confirmation. As the City notes, however, the plan states clearly that the value of a secured claim listed in the City's proof of claim controls over any contrary amount. Having filed a proof of a fully secured claim, the City did not need to object under the terms of Nelson's own plan.

In short, § 506 of the Bankruptcy Code fixed the value of the City's secured claim at the time of plan confirmation. Pursuant to the terms of the plan—which Nelson prepared—and without any objection from Nelson, the City's proof of its secured claim determined that claim's value. Neither § 506 or the language of the plan allowed Nelson to seek the relief she requested

10

over two and a half years after confirmation, and the bankruptcy court misinterpreted the law in holding otherwise. Accordingly, the court reverses the grant of the debtor's motion to determine the value of the City's claim. The value of the City's secured claim remains $5,677.85.

## II.     Motion to Modify Plan

The City also appeals the bankruptcy court's grant of Nelson's motion to modify her plan. It argues that the bankruptcy court lacked legal authority to modify the plan and that it relied on erroneous facts in granting the motion. On the first point, the City is mistaken: § 1329 allowed the bankruptcy court to reduce payments to unsecured creditors. But the Court agrees that the facts do not support the bankruptcy court's exercise of discretion in reducing payments to unsecured creditors by ninety-six percent (from twenty-six percent of the value of the unsecured claims to two percent).

Starting with the law, § 1327 of the Bankruptcy Code provides that a plan of confirmation is binding on the debtor and each creditor. Absent modification of a confirmed plan, the parties must therefore adhere to its terms. To modify a confirmed plan, "[a] bankruptcy court needs authority from a statute, rule, or the litigants' consent." *In re Terrell*, 39 F.4th 888, 893 (7th Cir. 2022). That authority generally comes from § 1329(a), which governs "modification of plan after confirmation." The City argues that nothing in § 1329(a) allows for the modification of the plan to reclassify a portion of Nelson's debt. That may be true according to some courts, *see, e.g.*, *In re Arguin*, 345 B.R. 876, 881 (Bankr. N.D. Ill. 2006), and the conclusion that Nelson may not seek to determine the value of City's debt post confirmation supports that interpretation. But § 1329(a)(1) of the Bankruptcy Code does allow a court to modify a plan upon the debtor's request to "increase or reduce the amount of payments on claims of a particular class provided for by the plan." It was generally within the bankruptcy court's

discretion to reduce the amount of payments to unsecured creditors from twenty-six to two percent as long as § 1329's requirements were met. *See Witkowski*, 16 F.3d at 745-46.

Discretion, however, is not unfettered. "The abuse-of-discretion standard does not preclude [one] court's correction of [another]'s legal or factual error." *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 572 U.S. 559, 564 n.2 (2014). *See also Witkowski*, 16 F.3d at 746 (noting that a reviewing court will not overturn a discretionary modification order "unless it is clear that no reasonable person could concur in the trial court's assessment of the issue under consideration." (quoting *Patterson v. Coca–Cola Bottling Co.*, 852 F.2d 280, 283 (7th Cir. 1988))). In granting Nelson's motion to modify, the bankruptcy court relied on several faulty premises. *See Dobbs v. DePuy Orthopaedics, Inc.*, 885 F.3d 455, 458 (7th Cir. 2018) ("[A] . . . court abuses its discretion when it bases its decision upon clearly erroneous factual findings."). After examining the record, the Court discerns no reasonable basis for so dramatically reducing payment to unsecured creditors.

The bankruptcy acknowledged that the Debtor's request to modify the plan did not address any of the grounds allowed for modification under § 1329. Nevertheless, the bankruptcy court granted the modification motion on the ground that the requested plan modification was "the only way for the Debtor to achieve the relief which will be granted." Bankr. Ct. Order at 1, ECF No. 1-4. As discussed above, however, the collateral valuation motion fails, so the bankruptcy court's stated basis for the modification motion necessarily fails as well. But even had Nelson properly brought her motion to value the collateral underlying the City's claim, neither the bankruptcy court's order nor Nelson's motion explain why affording her that relief would mandate drastically reducing the unsecured creditors' dividends.

Nelson's motion before the bankruptcy court did not cogently connect those dots, but from it the Court gleans that Nelson was tied to paying her unsecured creditors for only thirty-six months. If the bankruptcy court were to strip down the value of the City's unsecured debt to the value of her car, the total amount she would owe unsecured creditors would increase. Thus, to keep paying her unsecured creditors for the same amount of time the plan purportedly envisioned, Nelson would have to pay them substantially less than the plan provided. This seems to be what the bankruptcy court was referring to in observing that a dramatic reduction in the payments made to unsecured creditors was the only means of providing relief to Nelson if the collateral valuation motion were granted.

Setting aside Nelson's belated motion to value the City's collateral, the premise of Nelson's request is off base because the plan's terms did not limit her payments to thirty-six months. That payment schedule prescribed the minimum number of monthly payments Nelson was required to make, and the plan expressly contemplated that more—in excess of sixty—might be required. Section 2.1 of the plan states that "[i]f fewer than 60 months of payments are specified, additional monthly payments will be made to the extent necessary to make the payments to creditors specified in this plan." Proposed Plan § 2.1, Bankr. ECF No. 2. And the plan specified that Nelson would pay twenty-six percent of the total amount of unsecured claims. *Id.* § 5.1. Because the plan envisioned a scenario in which a debtor would make payments to unsecured creditors for longer than the specified term, there was no reason to modify the plan to shorten it. Modifying the plan was not the "only way to afford the Debtor relief"; to the contrary, allowing Nelson to reduce the value of the City's secured claim would not have required any modification of the plan's payments to unsecured creditors at all.

As a final note, the bankruptcy court's determination that Nelson's proposed modification was in good faith, Bankr. Ct. Order at 2, ECF No. 1-4, can also be questioned. "Whether a plan or petition is filed in good faith is a question of fact based on the totality of the circumstances surrounding the proposed plan." *In re Smith*, 286 F.3d 461, 466 (7th Cir. 2002). "At base, this inquiry often comes down to a question of whether the filing is fundamentally unfair." *Id.*

The bankruptcy court concluded that Nelson was acting in good faith because she had been making the required monthly payments and was only seeking to strip down the City's lien as permitted by § 506. True enough, but Nelson's motion admits that she ***could*** pay her creditors but simply did not want to continue to do so. As the bankruptcy court recognized, Nelson never specified a basis for modification at all. Her motion merely declared that she "would like to reduce the dividend so the projected duration of the plan can be reduced." Mot. to Modify ¶ 9, Bankr. ECF No. 27. That does not strike this Court as a good faith basis for modification of a confirmed plan. *See, e.g.*, *Smith*, 286 F.3d at 466 (quoting *In re Schaitz*, 913 F.2d 452, 453 (7th Cir. 1990)); *see also In re Carson*, 397 B.R. 911, 913 (Bankr. E.D. Wis. 2008) ("Generally, an attempt to modify a plan to prevent further payments to unsecured creditors is an attempt to avoid a prior default or to obtain a hardship discharge without proof, neither of which is allowable."); *In re Jordan*, 515 B.R. 576, 578 (Bankr. N.D. Ill. 2014) (finding fundamental fairness lacking where debtor requesting a plan modification resulting in lower dividend payment to creditors "ha[d] no difficulty making plan payments, and did not allege or show any difficulty from continuing plan payments"). Nevertheless, because the modification motion fails, there is no need to conclusively decide the point.[4]

---

[4] The bankruptcy court also found that the City was acting in bad faith because it improperly sought to modify confirmed plans as a secured creditor in various bankruptcy cases.

14

*    *    *

Nelson cannot seek to value the collateral underlying the City's claim years after plan confirmation. Neither can she seek to reduce payment to her unsecured creditors merely because she would like to cease monthly payments. The bankruptcy court's grant of both of Nelson's motions is therefore reversed.

Dated: August 10, 2023

John J. Tharp, Jr.
United States District Judge

---

It is unclear why the City's motives are relevant when Nelson proposed the modification to the plan. The relevance of the City's conduct in other, unrelated, litigation is also unclear.